G. WILLARD PHILLIPS AND RUSSELL B. PHILLIPS, PROSECUTORS, v. BOROUGH OF EAST PATERSON, A MUNICIPAL CORPORATION OF THE COUNTY OF BERGEN AND STATE OF NEW JERSEY; ZONING BOARD OF ADJUSTMENT OF THE BOROUGH OF EAST PATERSON; AND JOHN STEFANIC, BUILDING INSPECTOR, DEFENDANTS.

Argued March 20, 1946—Decided April 24, 1946.

Before Justice BODINE, at chambers under the statute.

For the prosecutors, *Winne & Banta* (*John A. Christie*).

For the defendants, *R. Sery Nicosia* and *Dominick F. Pachella.*

BODINE, J. On January 7th, 1946, the prosecutors applied for a writ of *certiorari* to review the zoning ordinance of the Borough of East Paterson, in so far as the ordinance regulates

premises known as lots 29 to 32, inclusive, in Block 20 on the tax assessment map of the borough. The property in question is located on the northwest corner of Broadway and Parkview Street. The writ also sought to review the refusal of the building inspector and Zoning Board of Adjustment of said borough in failing to issue to the prosecutors a permit authorizing the construction on said premises of a building to be used as an automobile show room and service station, as well as the refusal of the mayor and council of the borough to issue a permit for such operation.

The property in question is owned by the Urban Investing Corporation. The prosecutors of this writ are under contract for the purchase thereof, passing of title being conditioned upon their ability to obtain a permit for the desired use of the property. The property is zoned as in the "C" business zone. Such business zone is designed primarily as one intended for the conduct of commerce, general business and the sale of commodities, but excluded from such category is a gasoline filling station. Broadway, in the Borough of East Paterson, is part of what is commonly known as State Highway Route 4, and is a main east and west highway from Paterson through East Paterson, Fair Lawn, Paramus, Hackensack, Teaneck and Englewood to the George Washington Bridge.

The evidence shows that 18,000 automobiles pass the property every twenty-four hours. Passing from the highway at the borough line and traveling east along the north side one will find a large bar and grill, next a large automobile show room and service station. In the rear thereof, the property is used for the repair of automobiles and the storage and sale of junk and second-hand cars. These premises are within 150 feet of the prosecutors' lands. Beyond prosecutors' property is a real estate office and immediately next is a used truck and car lot taking up the entire block. Beyond is another real estate and developer's office; a Great Eastern Stop & Shop Market; a barber shop, meat market and grocery store, two delicatessen stores, a beauty shop, and a tailor shop. Driving on the other side of the highway in a westerly direction, the following business uses are observed: a building occupied by a paint contracting firm, a gasoline service sta-

tion—this service station was permitted after the adoption of the ordinance under review—continuing, there is a lunch and milk bar, an animal hospital, a public golf course with bar and restaurant.

There seems to be no question that prosecutors' plans and specifications are in all respects satisfactory. In fact, thirteen permits have been issued for gasoline service stations on the highways of the borough, notwithstanding that they were zoned against such use. At one time, a permit for the construction of a gasoline station was issued for the lands in question, but such station was never built for the simple reason that at that time economic conditions did not permit the financing of the operation.

The ordinance is void in that it does not fix any norm or standard for the granting of gasoline service station permits in the "C" zone. They have been granted, as appears, frequently in "C" zones, when, to the Board of Adjustment and mayor and council, there seems to be good reason shown. What this good reason may have been is not apparent, but it has been settled in this state that an ordinance is invalid where it vests broad discretion in the mayor and council in granting or not granting a permit. See *Lipkin* v. *Duffy*, 119 *N. J. L.* 366; *South Orange* v. *Heller*, 92 *N. J. Eq.* 505. The contemplated use was not detrimental to the neighborhood, as we have seen, and the failure to grant the permit was arbitrary and unreasonable. *Gulf Oil Corp.* v. *Board of Adjustment*, 132 *N. J. L.* 435. Of course, the use which can be made of property, which is on a high speed highway, where 18,000 cars pass daily, is very limited. There can be no harm to the public generally with one more gas station in the neighborhood. The refusal smacks of the exercise of an arbitrary power not in the public interest but in order to deprive the prosecutors of the use of property which they are under contract to buy. Such an ordinance and the exercise of such arbitrary power thereunder does not constitute due process of law. *Jersey Triangle Corp.* v. *Jersey City*, 127 *Id.* 194.

It is to be noted that the present application under review was made on December 4th, 1945, to the building inspector. The application was renewed before the Board of Adjustment

on December 18th, 1945; therefore there was a most timely application for a writ of *certiorari*. The application was well within thirty days after the filing of any decision in the office of the Board. *R. S.* 40:55–46. The records show material evidence, upon the consideration thereof the Board should have acted and granted the permit.

The prosecutors are entitled to their relief and such writ will be issued as may be necessary to effect the same, with costs.