2005 VT 32

## Keith GRAHAM v. SPRINGFIELD VERMONT SCHOOL DISTRICT

[872 A.2d 351]

No. 04-087

¶ 1. March 15, 2005. Defendant Springfield Vermont School District appeals a

jury verdict in favor of plaintiff Keith Graham, a maintenance worker who claimed that the District fired him because of his speech-related union activities, in violation of the federal and state constitutions. We conclude that the superior court erred by not considering the District's arguments that Graham had no direct cause of action for damages under the United States or Vermont Constitution, which should have resulted in dismissal of Graham's claims. Accordingly, we vacate the jury verdict in favor of Graham and enter judgment in favor of the District.

¶ 2. This case commenced after the District terminated Graham's employment in April 2001 because he allegedly misappropriated school equipment and then was not forthcoming about what happened with the equipment. Graham had worked for the District for more than twenty-five years at the time of his termination. He filed a lawsuit in August 2001, alleging that the District fired him because of his age and in retaliation for union activities that he had engaged in over the years. In October 2001, the trial court entered a scheduling order requiring the parties to file all pretrial dispositive motions by July 15, 2002. Shortly before that deadline, the District filed a motion for summary judgment. In September 2002, the trial court granted the District's motion with respect to all of Graham's claims except for his claim brought directly under the federal and state constitutions alleging that the District fired him because of his free speech activities. The court declined to dismiss that claim due to the lack of briefing on whether Graham's union activities implicated constitutional issues. A May 2003 trial on that claim resulted in a hung jury.

¶ 3. On August 18, 2003, two new attorneys replaced the District's previous counsel. Approximately one week later, a second trial was scheduled to begin on September 22, 2003 before a new judge and jury. On September 2, the District filed a motion to amend its answer to assert additional affirmative defenses. Specifically, the District asserted that (1) Graham could not bring a damages action for violation of free speech rights directly under the United States Constitution because of the availability of a federal statutory remedy, 42 U.S.C. § 1983; (2) Graham had no right of action based on the Vermont Constitution's free speech clause because of the availability of a state statutory remedy, the Vermont Municipal Labor Relations Act, 21 V.S.A. §§ 1721-1735; and (3) the District had not waived its defense of sovereign immunity. Graham opposed the District's motion to amend, arguing that the new defenses were futile. The trial court denied the District's motion, stating that the new defenses did not challenge the court's subject matter jurisdiction, and that they should have been raised earlier. The court indicated that it was not inclined to allow new legal theories after the first trial had ended.

¶ 4. The second trial began on September 22 and lasted four days. At the close of Graham's case, the District moved for judgment as a matter of law on the same grounds that it had raised in its motion to amend. The court denied that motion, as well as the District's motion for judgment as a matter of law filed at the close of all evidence. The jury returned a verdict in favor of Graham and awarded him $257,728. In response to the District's renewed motion for judgment as a matter of law and, in the alternative, its request for a remittitur, the court ruled that the evidence supported the jury's award, and that the District's attempt to raise new legal issues less than three weeks before commencement of the second trial prejudiced both the court and Graham by not allowing him sufficient time to prepare. On appeal, the District argues that the trial court erred (1) by

refusing to allow it to raise additional affirmative defenses before the second trial even though those defenses would have precluded Graham's claims and there was no showing of prejudice; (2) by finding sufficient evidence of a constitutional violation even though Graham's alleged speech related primarily to internal workplace matters rather than issues of public concern and there was no evidence that Graham's termination resulted from his speech or union activities; and (3) by refusing to grant a remittitur even though the jury failed to reduce Graham's future losses to present value, as the trial court had instructed it to do.

¶ 5. We find little evidence in the record demonstrating either that Graham engaged in constitutionally protected speech activities involving a public concern or that his speech was a motivating factor in the District's decision to fire him. We need not address these issues, however, because we conclude that Graham did not have a direct cause of action under either the United States or Vermont Constitution, and that the trial court should have dismissed Graham's remaining claims on that basis. Both the District, in its motion to amend, and the court, in its ruling on that motion, treated the District's new defenses as affirmative defenses that had to have been raised in the District's answer to Graham's complaint. None of the defenses raised by the District's new attorneys following the first trial, however, is one of the affirmative defenses explicitly set forth in V.R.C.P. 8(c). While the list in Rule 8 is not exclusive, the defenses raised by the District's new attorneys challenged the sufficiency of the pleadings, essentially alleging a failure to state a claim upon which relief may be granted. See V.R.C.P. 12(b)(6). Motions under Rule 12(b)(6) may be made "by motion for judgment on the pleadings [under V.R.C.P. 12(c)], or at the trial on the merits." V.R.C.P. 12(h)(2); 5C C. Wright

& A. Miller, Federal Practice and Procedure § 1367, at 216 (3d ed. 2004) ("The Rule 12(c) motion may be employed by the defendant as a vehicle for raising several of the defenses enumerated in Rule 12(b) after the close of the pleadings."). "In this context, Rule 12(c) is merely serving as an auxiliary or supplementary procedural device to determine the sufficiency of the case before proceeding any further and investing additional resources in it." C. Wright & A. Miller, *supra*, at 217.

¶ 6. To be sure, a motion for judgment on the pleadings should be made promptly after the close of pleadings so as not to delay the trial, see V.R.C.P. 12(c), but "if it seems clear that the motion may effectively dispose of the case on the pleadings, the ... court should permit it regardless of any possible delay consideration of the motion may cause." C. Wright & A. Miller, *supra*, at 216. By the same token, with respect to a motion to amend, "V.R.C.P. 15 directs the trial court to consider not whether the amendment raises a new cause of action but 'whether the just and expeditious disposition of the controversy between the parties will be advanced by permitting the amendment.'" *Perkins v. Windsor Hosp. Corp.*, 142 Vt. 305, 313, 455 A.2d 810, 815 (1982) (quoting 1A W. Barron & A. Holtzoff, Federal Practice and Procedure § 448, at 753 (C. Wright ed. 1960)); see *Bevins v. King*, 143 Vt. 252, 254-55, 465 A.2d 282, 283 (1983) ("When there is no prejudice to the objecting party, and when the proposed amendment is not obviously frivolous nor made as a dilatory maneuver in bad faith, it is an abuse of discretion to deny the motion [to amend].").

¶ 7. In this case, the District's new attorneys were not foreclosed from raising previously unaddressed legal theories to defend against Graham's claims before the start of the second trial. Nor did Graham even assert that he would be

prejudiced by the District raising those defenses, which did not concern any additional facts; indeed, Graham argued only that the new legal defenses were futile. The District reasserted the new defenses in motions before, during, and after the second trial, essentially seeking judgment based upon Graham's failure to state a claim upon which relief may be granted. See V.R.C.P. 50(a)(1), (b) (during jury trial, court may grant judgment as matter of law with respect to claim or defense that cannot be maintained under controlling law; if motion for judgment as matter of law is renewed after entry of judgment, issue is preserved for appellate review). The superior court erred by not considering the District's new legal theories, which directly challenged the viability of Graham's remaining claims against the District.*

¶ 8. Had the superior court considered the new defenses, it would have been compelled to dismiss Graham's remaining claims. See 5B C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 415 (3d ed. 2004) ("Since the motion to dismiss under subdivision (6) raises only an issue of law, the court has no discretion as to whether to dismiss a complaint that it determines is formally or substantively insufficient."). Regarding Graham's claim for damages under the United States Constitution, "[c]ourts have shown great reluctance to exercise judicial power to imply a damage remedy directly under the constitution when Congress has created an alternative remedy, even when limitations in the statutory remedy make it unavailable to the plaintiffs seeking relief." *Sabia v. State*, 164 Vt. 293, 311, 669 A.2d 1187, 1199 (1995). Although 42 U.S.C. § 1983 has several limitations, it "provides a damage remedy to redress injuries resulting from violations of federal statutory or constitutional rights under color of state law." *Id.* at 310, 669 A.2d at 1198. Graham acknowledges his failure to plead § 1983, but argues that his claims encompassed the statutory provision, even if it was not specifically pled. According to Graham, he is entitled to relief under the principle that a judgment will be upheld if supported by any legal ground justifying the result, even when that ground is different from the ground relied upon by the trial court and parties. See *Richards v. Union High School Dist. No. 32*, 137 Vt. 132, 134, 400 A.2d 987, 989 (1979).

¶ 9. This argument has no merit. By failing to plead § 1983, Graham prevented the District from raising any defenses that may have been available because of § 1983's limitations. Thus, whatever potential defenses the District may have had were not considered at trial. We will not presume that Graham could have overcome those defenses in the event he had pled the statutory remedy. Because of the availability of the statutory remedy, no direct action for damages under the United States Constitution was available to Graham.

¶ 10. Regarding Graham's claims for damages under the Vermont Constitution, we have held that when the Legislature has provided a reasonably adequate remedy, even if it is not as effective for the plaintiff as money damages, "we will ordinarily defer to the statutory remedy and refuse to supplement it" by implying a damages remedy to enforce state con-

---

* If the defenses raised in the District's motion to amend before the start of the second trial had been affirmative defenses that the District had to have pled in its initial answer to the complaint, the trial court may well have acted within its discretion in denying the motion, which was filed after the first trial and thus long after expiration of the court's initial discovery order. That is not the case, however, as explained above.

stitutional rights directly under the Vermont Constitution. *Shields v. Gerhart*, 163 Vt. 219, 234-35, 658 A.2d 924, 935 (1995). In *Shields*, we held that the plaintiff could not pursue an action for damages directly under the Vermont Constitution because she failed to avail herself of the administrative remedy available to her, specifically a hearing before the Human Services Board to adjudicate her claim that a state agency had retaliated against her for engaging in her right to free speech. *Id.* at 236, 658 A.2d at 935. As support for our holding, we compared a prior case in which a state employee had brought a similar retaliation claim in an employment context before the Vermont Labor Relations Board. *Id.* (citing *In re Morrissey*, 149 Vt. 1, 14-19, 538 A.2d 678, 686-89 (1987)). Like the plaintiffs in *Shields* and *Morrissey*, Graham had available to him an administrative remedy for his retaliation claim. As a municipal employee, Graham could have brought an unfair labor practice claim under the Vermont Municipal Labor Relations Act, 21 V.S.A. §§ 1721-1735.

¶ 11. One of the purposes of the Act is to protect the rights of employees to participate in employee organizations and to provide procedures for preventing both employers and employees from interfering with each other's legitimate rights. *Id.* § 1721. The Act makes it an unfair labor practice for an employer to discriminate based on union membership with respect to hiring or tenure of employment, *id.* § 1726(a)(3), and "[t]o penalize a person for exercising a right guaranteed by the constitution or laws of the United States or the state of Vermont," *id.* § 1726(b)(10). When a charge of an unfair labor practice is made, the Labor Relations Board may serve a complaint and hold a hearing. *Id.* § 1727(a). If the board confirms an unfair labor practice, it may issue a cease-and-desist order and require the offending party "take such affirmative action as the board shall

order." *Id.* § 1727(d). Further, if the complaining party does not have recourse to binding arbitration under a labor contract grievance procedure for suspension or discharge, the board may require reinstatement and back pay. See *id.* § 1727(f). Finally, § 1728, which provides that the expression of views shall not constitute evidence of an unfair labor practice, is plainly intended to protect the free speech rights of entities charged with an unfair labor practice, not to protect those retaliating against others for expressing their views, as Graham suggests. We conclude that the Act provided a reasonably adequate remedy for Graham to have his retaliation claim adjudicated, and therefore a direct action under the Vermont Constitution was not available to him. Hence, the superior court erred by not dismissing his claim made directly under the Vermont Constitution.

*The judgment in favor of plaintiff is vacated, and judgment is entered for defendant.*